### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**RONALD Z.,**[1]

   **Plaintiff,**

           **Case No. 3:23-cv-22798**
  **v.**          **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

   **Defendant.**

### OPINION AND ORDER

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ronald Z. for Disability

Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff

appeals from the final decision of the Commissioner of Social Security denying that application.

After careful consideration of the entire record, including the entire administrative record, the

Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the

reasons that follow, the Court affirms the Commissioner's decision.

### I. PROCEDURAL HISTORY

  On September 4, 2020, Plaintiff filed his application for benefits, alleging that he has

been disabled since January 1, 2016. R. 130, 135, 310–11. The application was denied initially

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] [2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

and upon reconsideration. R. 146–50, 153–62. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 163–65. ALJ Trina Moore held a hearing on November 24, 2021, at which Plaintiff participated without the assistance of counsel. R. 126–29. Plaintiff identified his medical providers and the ALJ advised that she would request updated records and then continued the hearing. R. 128–29. At the next hearing, held on June 13, 2022, the ALJ granted the request of Plaintiff, again proceeding *pro se*, to continue the hearing until he could secure and provide counsel a chance to review his file. R. 120–25. The ALJ held a third hearing on October 19, 2022, at which Plaintiff, who was then represented by counsel, testified, as did a vocational expert. R. 88–119. In a decision dated March 6, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 1, 2016, Plaintiff's alleged disability onset date, through December 31, 2018, the date on which Plaintiff was last insured for disability benefits. R. 62–73. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 30, 2023. R. 9–15. In reaching that decision, the Appeals Council noted that Plaintiff's newly submitted medical records were unrelated to the relevant period:

> You submitted medical records from Barnegat Medical, dated July 22, 2022 through March 3, 2023 (6 pages), Ocean Renal Associates, dated November 12, 2021 (8 pages), Barnegat Medical, dated July 22, 2022 through June 9, 2023 (22 pages), and prescriptions from Kathleen M. Powers, APRN (1 page), dated March 9, 2023. The Administrative Law Judge decided your case through December 31, 2018. The Administrative Law Judge decided your case through December 31, 2018. [sic] This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 31, 2018.

R. 10. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 1, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[3]

On June 12, 2024, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for

disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

at *4 (D.N.J. Mar. 27, 2018).

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 47 years old on December 31, 2018, the date on which his insured status lapsed. R. 71. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2016, his alleged disability onset date, and the lapse of his insured status. R. 64.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus with retinopathy and neuropathy; coronary artery disease; chronic kidney disease; hypertension; anxiety; agoraphobia; posttraumatic stress disorder ("PTSD"); insomnia; and major depressive disorder. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 65–66.

At step four, the ALJ found that Plaintiff had the RFC to perform  a full range of work at all exertional levels but with various non-exertional limitations. R. 67–71. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an auto mechanic, auto body repair chief, car wash attendant, auto painter helper, and auto body repairer. R. 71.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as a hand launderer, a cleaner, and a meat clerk—existed in the national economy and could be performed by Plaintiff with this RFC. R. 71–73. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2016, his alleged disability onset date, through December 31, 2018, his date on which he was last insured. R. 73.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief* ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 12.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Reviewing State Agency Medical Consultants

Consultant Esther Tomor[4] conducted an initial review of Plaintiff's medical record on

---

[4] Consultant Tomor's specialty is internal medicine, but her precise credentials are not apparent in the record. R. 132, 134.

behalf of the state agency on November 5, 2020. R. 131–34. The doctor concluded that Plaintiff

had the severe physical impairment of arachnoiditis, but also concluded that there was

insufficient medical evidence prior to September 31, 2018, the date on which Plaintiff was last

insured:

> Evaluation:
>
> Initial DIB only with DLI 12/31/2018. AOD 01/01/2016. 49 yo. Allegations:
> Diabetes; Arthritis; Anxiety; Depression; Heart Condition; Heart Attack; HBP;
> High Cholesterol; Shoulder pain
>
> There is insufficient evidence between AOD 01/01/2016 and DLI 12/31/2018, and
> this claim is rated as medically insufficient prior to DLI.
>
> These findings complete the medical portion of the disability determination.

R. 132; *see also* R. 133 ("No RFCs are associated with this claim.").

Consultant Lloyd Marks[5] reviewed Plaintiff's medical record upon reconsideration for

the state agency on April 26, 2021. R. 136–39. He noted that the record contained no new

medical evidence and agreed with the conclusions of the initial review. R. 138.

> Analysis
>
> initial Tomor/Sanford
> DLI 12/31/208
> Rep ltr
>
> NO NEW MER
>
> PH: RECON, AFFIRM
> ME: RECON, AFFIRM AS WRITTEN
>
> Analysis:
> This T2 claim is insufficient prior to DLI. Accordingly, denial is affirmed.

R. 137. Consultant Marks specifically concluded that there was insufficient medical evidence

---

[5] Consultant Marks's specialty is cardiology, but his precise credentials are not apparent in the
record. R. 137, 139.

prior to Plaintiff's date last insured of September 31, 2018:

> Evaluation:
>
> Initial DIB only with DLI 12/31/2018. AOD 01/01/2016. 49 yo. Allegations: Diabetes; Arthritis; Anxiety; Depression; Heart Condition; Heart Attack; HBP; High Cholesterol; Shoulder pain
>
> There is insufficient evidence between AOD 01/01/2016 and DLI 12/31/2018, and this claim is rated as medically insufficient prior to DLI.
>
> RECON: Affirm
>
> These findings complete the medical portion of the disability determination.

R. 137; *see also* R. 138 ("There is no indication that there is a medical opinion from any medical source. . . . No RFCs are associated with this claim.").

### B.    Reviewing State Agency Psychiatric Consultants

Consultant Cheryl Sanford[6] conducted an initial review of Plaintiff's medical record on behalf of the state agency on November 5, 2020. R. 131–34. Plaintiff's depressive, bipolar and related disorders were characterized as secondary and non-severe; Consultant Sanford noted that "[t]here are no mental medically determinable impairments established." R. 132–33. Under the heading "PRT Additional Explanation[,]" Consultant Sanford noted that "[t]here is insuff evid prior to DLI." R. 133.

Consultant Helen Feldman[7] reviewed Plaintiff's medical record upon reconsideration for the state agency on July 16, 2019. R. 136–39. Plaintiff's depressive, bipolar and related disorders were noted as secondary and non-severe and Consultant Feldman noted further that "[t]here are no mental medically determinable impairments established." R. 138. Under the heading "PRT

---

[6] Consultant Sanford's specialty is psychology, but her precise credentials are not apparent in the record. R. 133.
[7] Consultant Feldman's specialty is psychology, but her precise credentials are not apparent in the record. R. 138.

10

Additional Explanation[,]" Consultant Feldman found that "[t]here is insuff evid prior to DLI" and "RECON, AFFIRM AS WRITTEN[.]" *Id*.

## V.    DISCUSSION

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can never climb ladders, ropes, scaffolds or crawling. He can occasionally climb ramps and stairs, balance, stoop, kneel and crouch. He can do no constant operation of foot controls bilaterally. He can frequently handle and finger bilaterally. He must avoid all exposure to hazards such as unprotected heights and moving mechanical parts. He cannot do driving for a profession. He cannot

> read less than 12 point font constantly. He retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. He can do no assembly line or production rate pace work. He can do no work in tandem. He can have occasional interaction with co-workers and supervisors, but no customer service work. He is able to tolerate occasional changes in the work setting and work processes.

R. 67. In crafting this RFC, the ALJ considered years of record evidence, including, *inter alia*, Plaintiff's testimony that his blood sugar level is not controlled, which leads to dizziness, blurry vision, an inability to "think straight", and a reluctance to leave the house; Plaintiff's statements in his function report that, among other things, he spends his days watching television and napping, has trouble paying attention due to racing thoughts, and cannot finish tasks or follow written directions well. R. 67–68. The ALJ also noted that Dr. Vasil Moshkovitch, Plaintiff's treating internist since at least March 2015, reported a blood pressure of 144/98[8] and prescribed Diovan for high blood pressure and Xanax for anxiety and depression. R. 68. "Progress notes from Dr. Moshkovitch through the date last insured of December 31, 2018, show a record of ongoing management of the claimant's chronic conditions" with "mostly of regularly scheduled visits, with no emergency visits for exacerbations of symptoms" and "[m]ore recent progress notes also tend to be routine in nature", with Plaintiff's "physical condition appear[ing] to have remained stable but he became more depressed[.]" R. 68–69. As for Plaintiff's vision, an August 2017 eye examination reflected visual acuity of 20/20 in both eyes with "mild" proliferative diabetic retinopathy, but without macular edema. R. 69.

The ALJ considered the reviewing state agency consultants' findings and opinions and explained why those findings were not persuasive:

---

[8] The ALJ also noted that "[a] normal blood pressure is below 120/80. The definition of hypertension is a blood pressure of greater than 130/90 on at least 2-3 occasions separated over time." R. 68.

In the initial determination, a state agency medical consultant reviewed the record at the request of the Administration and stated that there was insufficient evidence by the date last insured of December 31, 2018, to evaluate the claim (Exhibit 2A). In the reconsideration determination, another consultant reviewed the record and seconded this opinion (Exhibit 4A; s/a Exhibit B2F). These opinions are not persuasive because significant evidence was not in the file when the consultants gave their opinions, and they are not consistent with the preponderance of the updated evidence. However, while the updated evidence establishes severe impairments, and postural, manipulative and mental limitations, it does not establish disabling symptoms and limitations (see 20 CFR 404.1527(e) & 416.927(e)).

R. 69. The ALJ went on to consider Plaintiff's subjective complaints, finding that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not fully supported:

The evidence supports that the claimant is capable of a range of sedentary to heavy work with postural, manipulative and mental limitations that are not work preclusive.

With respect to the claimant's physical impairments, they do not limit his ability to sit, stand, walk, lift or carry. On January 15, 2016, two weeks after the alleged onset date, Dr. Moshkovitch examined the claimant, but did not report any significant change in the claimant's condition since before the alleged onset date. He reported that the claimant came in because he was seeking clearance for a dental procedure. At the time, there was no change in the claimant's condition, except that his blood pressure had returned to normal (120/80) when he was taking Diovan (Exhibit 1F, pp 19-22). Progress notes from Dr. Moshkovitch through the date last insured of December 31, 2018, show a record of ongoing management of the claimant's chronic conditions. But the record consists of regularly scheduled visits, with no emergency visits for exacerbations of symptoms (Exhibits B1F-B7F). From the alleged onset date to the date last insured, the claimant's treatment tended to be essentially routine and conservative in nature, with no indication of a plan or need for more aggressive care. In fact, the record reflects that the claimant's daughter encourages him to go for walks, since it has been recommended by his providers, but he declines (Exhibit B6F, p 11).

With respect to the claimant's psychological impairments, Dr. Moshkovitch reported that the claimant was anxious and depressed, and maintained him on Xanax, but the claimant [i]s not in any mental health treatment. Further, claimant's healthcare providers have not recommended inpatient treatment or hospitalization, and the record does not support any crisis calls, crisis interventions or emergency

13

room visits related to any mental health condition. The claimant's wife is agoraphobic therefore, the claimant likely mimics the behavior pattern and has been counseled to perform activities without his family (Exhibit B6F, pp 20- 24).

Overall, the preponderance of the evidence establishes that his symptoms and limitations are consistent with an ability to do sedentary to heavy work with postural and manipulative limitations. In addition, he can do such work involving ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions, and with occasional interaction with co-workers and supervisors, but no customer service work. Based on the foregoing, the undersigned finds that the claimant's impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are accepted only to the extent that they are consistent with the preponderance of the updated evidence, and the findings in this decision.

R. 70–71. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to discount the claimant's subjective complaints); *cf. Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655 (3d Cir. 2010) ("[H]e also testified that he had the ability to read, watch television, and play video games. The ALJ found that these activities required a degree of concentration, persistence, or pace. We agree and hold that when all of the testimony is considered together, substantial evidence supports the ALJ's finding of moderate limitations in concentration, persistence, or pace."); *Henderson v. Saul*, No. 1:19-CV-811, 2020 WL 2556915, at *11 (M.D. Pa. May 20, 2020) (finding that substantial evidence supported the ALJ's consideration of the claimant's subjective statements where, *inter alia*, "concerning her mental impairments, the ALJ reasoned that Henderson had generally treated her impairments with medication and conservative outpatient therapy. The ALJ further noted that Henderson never required inpatient psychiatric intervention or any other significant treatment, and that she

14

generally showed intact attention, concentration and memory and fair insight and judgment. The ALJ examined Henderson's treatment notes, which indicated that her depression and her pain was being managed by medications and outpatient therapy").

Plaintiff, however, argues that substantial evidence does not support the RFC because there are no medical opinions in the record addressing Plaintiff's work limitations and the ALJ merely relied on her own lay interpretation of raw medical data to craft the RFC. *Plaintiff's Brief*, ECF No. 10, pp. 11–18. Plaintiff's arguments are not well taken.

To the extent that Plaintiff suggests that the ALJ must support every RFC limitation with a matching medical opinion, Plaintiff is mistaken. As previously discussed, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). Accordingly, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003) ("Primarily, the ALJ is responsible for making a residual functional capacity determination based on the medical evidence, and he is not required to seek a separate expert medical opinion."). Notably, "the ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler*, 667 F.3d at 362. Moreover, the ALJ in this case did not rely simply on her own lay interpretation of medical records when she crafted the RFC. As detailed above, the ALJ appropriately considered, *inter alia*, that Plaintiff's chronic conditions were managed with generally routine and conservative treatment through regularly scheduled visits and no emergency visits for exacerbation of his physical symptoms; Plaintiff

took Xanax for anxiety and depression, but had not received any other mental health treatment; there was no evidence of any crisis calls, crisis interventions, or emergency room visits related to any mental health condition; and there were no recommendations that Plaintiff receive inpatient treatment or hospitalization. R. 70.

Plaintiff also complains that the ALJ impermissibly substituted her own lay opinion for that of a medical opinion and "play[ed] doctor" when she noted that Plaintiff's wife was agoraphobic and speculated that Plaintiff "likely mimics the behavior pattern[.]" *Plaintiff's Brief*, ECF No. 10, pp. 17–18 (internal quotation marks omitted). The Court is not persuaded that this issue requires remand. Even if the ALJ erred in this regard, Plaintiff has not explained how any such error harmed him. *See id.* Plaintiff does not identify any purported functional limitation purportedly flowing from his agoraphobia that the RFC fails to accommodate or that otherwise requires a finding of disability. *See id*. Based on this record, the Court cannot say that any error on the part of the ALJ in this regard is anything other than harmless; any such error does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover.") (citation omitted); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff also complains that the ALJ assessed no exertional limitations despite finding multiple severe impairments and he points to evidence that he believes demonstrates that his

diabetes was uncontrolled: his "continuous complaints of dizziness caused by abnormally high blood glucose warrants a reduction to sedentary exertion." *Plaintiff's Brief*, ECF No. 10, pp. 13–15. This Court disagrees. First, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because a claimant's RFC is the most that he can do despite his limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id.* (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id.* Moreover, and as previously noted, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone . . . does not demonstrate disability.") (citing Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990)); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Second, to the extent that there exists some record evidence that supports Plaintiff's position, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler,* 667 F.3d

at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual

determinations [under the substantial evidence standard]."). Moreover, even if Plaintiff

experienced some pain and discomfort, such evidence does not establish that Plaintiff was

disabled. *See Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) ("[W]hile Welch's pain may be

constant and uncomfortable, it is not disabling or severe."); *see also Null v. Saul*, No. CV 2:18-

759, 2019 WL 2867201, at *3 (W.D. Pa. July 3, 2019) ("It is well-established, however, that a

claimant need not be pain free or symptom free to be found not disabled. Rather, the claimant

must still show he is unable to perform substantial gainful activity. . . . As set forth above, the

ALJ here did not disagree that Plaintiff experiences significant, and sometimes increasing, pain;

he found, however, that the pain was sufficiently controlled with medication and other treatment

to permit Plaintiff to perform some substantial gainful activity.") (internal citations omitted);

*McIntyre v. Berryhill*, No. CV 17-2176, 2018 WL 5962476, at *5 (D.N.J. Nov. 13, 2018) ("It

must be remembered, however, that to be fit for work, a claimant need not be pain-free or

symptom-free.") (citing *Welch*, 808 F.2d at 270); *Bennick v. Berryhill*, No. 3:16-CV-2391, 2017

WL 2957870, at *12 (M.D. Pa. July 11, 2017) ("Importantly, the ALJ did not find Plaintiff

symptom-free: she noted Plaintiff's testimony about the effectiveness of pain medications and

acknowledged her previous and future surgeries related to arthritis. As many decisions in the

Third Circuit have noted, a claimant 'need not be pain-free to be found 'not disabled' especially

when her work issue requires a lower exertional level.'") (citations omitted).

   Finally, noting that the state agency reviewing consultants reviewed the record and

concluded that there was insufficient evidence to assess Plaintiff's functional limitation, Plaintiff

argues that the ALJ had the duty to more fully develop the medical record by securing a medical

expert. *Plaintiff's Brief*, ECF No. 10, pp. 12–13, 18; *see also id*. at 11 – 12 (noting that ALJ "can" order consultative examinations). Plaintiff's arguments are not well taken.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec*., No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec*., No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). Moreover, when the claimant is represented by counsel, it is the claimant's counsel who is "responsible for ensuring that the ALJ was aware of any facts favorable to [the claimant's] claim for benefits." *Turby v. Barnhart*, 54 F. App'x 118, 122 (3d Cir. 2002). Relatedly, "the ALJ is entitled to assume that the claimant is making the strongest case possible for benefits" when counsel represents the claimant at the administrative level. *Myers v. Berryhill*, 373 F. Supp. 3d 528, 539 (M.D. Pa. 2019).

An ALJ retains the discretion, but not the duty, to order a consultative examination. *See* 20 C.F.R. § 404.1520b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense[.]") (emphasis added); *see also Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the

Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontact treating sources and stating, "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method").

Similarly, an ALJ is vested with broad discretion in determining whether to consult a medical expert. *Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006); *see also* 20 C.F.R. § 404.1529(b) ("At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) *may* ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms.") (emphasis added); *Miguel v. Comm'r of Soc. Sec.,* 129 F. App'x 678, 680 (3d Cir. 2005) (The regulations do not require that a medical expert testify at the claimant's hearing.").

In the present case, Plaintiff was represented by counsel throughout most of the administrative process, including at the third administrative hearing, when Plaintiff and a vocational expert testified, and through the administrative appeals process. R. 9–15, 23-44, 53–58, 88–119, 140–43, 229–30, 267–70, 310–11, 445–47, 460–61. At the administrative hearing held on October 19, 2022, Plaintiff's counsel represented that, with the exception of medical

records from a gastroenterologist, the record was complete. R. 91. The ALJ advised that she

would provide counsel 30 days from the date of that hearing to submit additional records and

that, if counsel needed additional time, to submit a written request for an extension. R. 91, 119.

After counsel had neither submitted those records nor requested additional time in which to do

so, the ALJ advised on January 24, 2023, that if counsel did "not send the evidence, request

additional time, or satisfactorily explain why you cannot submit the requested evidence, within

10 days of the date of this letter," the ALJ "will make [her] decision based on the available

evidence." R. 460. It does not appear that Plaintiff's attorney responded to that warning and, on

March 6, 2023, the ALJ issued her decision. R. 62–73. In short, Plaintiff–whose burden it was to

develop the record and establish his claim to benefits—failed to do so. Although Plaintiff now

insists that the ALJ had the duty to develop the record by, *inter alia*, ordering a consultative

examination or obtaining the services of a medical expert, Plaintiff made no such request of the

ALJ. Indeed, Plaintiff's counsel expressly characterized the record before the ALJ as "complete"

with the exception of records from a gastroenterologist (which counsel apparently did not submit

to the ALJ despite ample time to do so), and never sought an extension of time to obtain either a

consultative examiner or medical expert. R. 91, 460–61. *See Lane v. Comm'r of Soc. Sec.*, 100 F.

App'x 90, 95 (3d Cir. 2004) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) for

the proposition that an ALJ "is entitled to rely not only on what the record says, but also on what

it does not say").

Moreover, Plaintiff has not persuaded the Court that the record was so deficient as to

preclude the ALJ from assessing Plaintiff's functional limitations. As detailed above, the ALJ

considered years of evidence regarding Plaintiff's physical and mental impairments. R. 67–71.

Although Plaintiff suggests that the state agency reviewing consultants' opinions of insufficient

evidence means that the ALJ could not assess Plaintiff's impairments, the ALJ rejected those opinions and explained why the record, including evidence added after these consultants had rendered their opinions, provided evidence sufficient to evaluate Plaintiff's functional limitations. R. 69. In other words, the ALJ considered the objective medical evidence of record and determined that the record before her offered sufficient information to reach a conclusion. Substantial evidence supports that determination. Plaintiff therefore has not persuaded this Court that the ALJ erred in declining to exercise her discretion to order a consultative examination or obtain a medical expert.

In short, for these reasons, the Court concludes that the ALJ fulfilled her duty in considering the record and her findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 15, 2025                      _____*s/Norah McCann King*_____
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE